O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARGARET J. HAMMOND, | Case No. CV 17-00001-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security,[1] | |
| Defendant. | |

Margaret J. Hammond ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.

# BACKGROUND

Plaintiff filed an application for DIB in 2012, alleging disability beginning January 20, 2011. See Administrative Record ("AR") 270-73. After her application was denied initially, see AR 168-72, and on reconsideration, see AR 175-80, she requested a hearing before an administrative law judge ("ALJ"), see AR 181-82. Plaintiff's hearing took place over three days in 2014 and 2015. AR 46-73, 74-77, 78-123. The ALJ heard testimony by a vocational expert and Plaintiff, who was represented by counsel. See id.

In a written decision issued May 11, 2015, the ALJ denied Plaintiff's claim for benefits. See AR 14-45. He found that Plaintiff had a number of severe impairments, including degenerative disc disease, scoliosis, mood disorder, obesity, and diabetes mellitus. See AR 21-26. However, the ALJ determined that the severe impairments did not meet or medically equal the severity of a listed impairment. See AR 26-29. He found that despite those impairments, Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: she could lift 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for 6 hours and sit for 6 hours; could never climb ladders, ropes, or scaffolds; could no more than occasionally climb ramps and stairs, balance, stoop, crouch, and crawl; and had to avoid even moderate exposure to hazards. See AR 29-35. Based on the RFC, the ALJ found that Plaintiff could not perform her past relevant work as a van or bus driver. See AR 36. However, Plaintiff could perform alternative work as a storage facility rental clerk, a classifier, and a housekeeping cleaner. See AR 37. Thus, he determined that Plaintiff was not disabled during the relevant period. See id.

After the Appeals Council denied review of the ALJ's decision, see AR 1-16, the ALJ's May 2015 decision became the final decision of the

Commissioner. <u>See</u> 20 C.F.R. § 404.984. This action followed.

## II.

## DISCUSSION

Plaintiff argues that the ALJ improperly rejected the medical evidence from her treating physician. <u>See</u> Dkt. 28, Joint Stipulation ("JS") at 4.

**A.** **Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. <u>See</u> 20 C.F.R. § 404.1527(c); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).[2] A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. <u>See</u> <u>Lester</u>, 81 F.3d at 830. When a treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing <u>Lester</u>, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is

---

[2] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. <u>See</u> <u>Lowry v. Astrue</u>, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); <u>Garrett ex rel. Moore v. Barnhart</u>, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, the Court applies the version of 20 C.F.R. § 404.1527 that was in effect at the time of the ALJ's May 2015 decision.

brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. See 20 C.F.R. § 404.1527(c)(2)-(6).

**B.   Relevant Facts**

Dr. Kourosh K. Shamlou is an orthopedic surgeon who met with Plaintiff for the first time on March 2, 2011, regarding Plaintiff's low back and right leg pain. See AR 2484. Dr. Shamlou met with Plaintiff for follow-up appointments on April 6, 2011 (see AR 2482); May 18, 2011 (see AR 2480); June 17, 2011 (see AR 2478); and July 29, 2011 (see AR 2476). Dr. Shamlou performed a microdiscectomy (minimally invasive surgical procedure to relieve nerve compression in the back) on Plaintiff on August 2, 2011. See AR 2474. Dr. Shamlou met with Plaintiff for a post-operative evaluation on August 16, 2011, and Plaintiff stated that she was "feeling much better." AR 2472. On September 7, 2011, Plaintiff told Dr. Shamlou that she "feels about 75% better" compared to before the surgery. AR 2470. On October 5, 2011, Plaintiff reported sudden increasing pain. See AR 2468. On November 8, 2011, Plaintiff still reported pain, but Dr. Shamlou concluded that MRI images did not warrant additional surgery. See AR 2466. On December 29, 2011, Plaintiff continued to complain of pain. See AR 2465. On January 26, 2012, Dr. Shamlou gave Plaintiff Vicodin and Ultram to help with the pain until she saw her pain management specialist. See AR 2463. Plaintiff met with Dr. Shamlou again on February 28, 2012 (see AR 2461), and on April 17, 2012, when Dr. Shamlou "explained to the patient that she cannot be given medications from two sources," and that "if she continues to take medications from two sources [Dr. Shamlou] would not be able to treat her." AR 2459. Dr. Shamlou gave

Plaintiff two bottles of a muscle relaxant but told her that from that point, she would need to get all of her medication from her pain management specialist. See id.

Plaintiff met with Dr. Shamlou again on May 29, 2012, June 28, 2012, and August 23, 2012; Dr. Shamlou recommended continuing with her physical therapy exercises and treatment from a pain management specialist. See AR 4698, 4696, 3151. On October 26, 2012, Dr. Shamlou concluded that Plaintiff was "taking multiple medication which is not helping her." AR 3149. He also noted that Plaintiff was not interested in surgical options. See id. At a December 11, 2012 appointment where Plaintiff continued to complain of pain, Dr. Shamlou learned after speaking with Plaintiff's pain specialist that the specialist had discharged Plaintiff because "she was doctor shoppin[g and] would not follow with treatment regiment [sic] they had recommended. She would call routinely earlier that her medication refill was needed that would ask for additional refills. . . . She is asking for narcotics from me and I have informed her that I will not be able to refill her narcotics." AR 3147.

Dr. Shamlou continued to meet with Plaintiff every few months in 2013. At a February 19, 2013 appointment, Dr. Shamlou indicated that Plaintiff was still not interested in surgical options and was only interested in pain management, and that Plaintiff was disabled due to her many pain medications. See AR 4700. On May 9, 2013, Dr. Shamlou noted that he had referred Plaintiff to two different pain management specialists, both of whom had discharged Plaintiff; he gave Plaintiff a refill of Vicodin and Zanaflex. See AR 4702. On August 29, 2013, Dr. Shamlou indicated that Plaintiff's speech was labored and she appeared to be over-medicated. See AR 2706. On December 31, 2013, Dr. Shamlou noted that Plaintiff was still not interested in surgical treatment. AR 4708.

On April 16, 2014, Dr. Shamlou wrote that Plaintiff's condition was

stationary; she would still need chronic pain management; she should continue with her home exercises; and Plaintiff should follow-up on an as-needed basis. See AR 4704. On the same day, Dr. Shamlou completed a Residual Functional Capacity Questionnaire. See AR 4446-47. Dr. Shamlou opined that Plaintiff could sit, stand, and walk for less than 30 minutes at one time and less than 2 hours in an 8-hour day; could lift up to 10 pounds rarely but never anything heavier; could rarely push or pull; could never bend, stoop, squat, crawl, climb, or crouch, and rarely reach up, reach forward, or kneel; and, due to pain, had no useful ability to function. See id. On June 9, 2014, Dr. Shamlou wrote a letter stating that Plaintiff's "current disability has restricted her from cooking, cleaning and daily activities within her home" and requested that Plaintiff's food benefits be increased. See AR 4710.

The ALJ gave several reasons for discounting Dr. Shamlou's opinions: (1) the objective medical evidence did not support Dr. Shamlou's opinion; (2) the opinions of State Agency medical consultants and a treating physician conflicted with his opinion; (3) the "absence of commensurate treatment"; (4) Dr. Shamlou's actively assisting Plaintiff in receiving food benefits; and (5) Dr. Shamlou's failure to address in the RFC questionnaire Plaintiff's drug-seeking behavior. See AR 31-32.

**C.  Analysis**

Plaintiff argues that the ALJ erred in discounting the treating physician's opinion. See JS at 4. Although not all of the reasons given by the ALJ are legally valid, the Court nonetheless finds that the ALJ gave specific and legitimate reasons for discounting Dr. Shamlou's contradicted opinion.

As an initial matter, the Court cannot rely on the conflicts between Dr. Shamlou's opinion and other physician opinions as a specific and legitimate reason for discounting Dr. Shamlou's opinion. Two State Agency physicians, Drs. Acinas and Wright, reviewed the medical records and opined in 2012 and

2013, respectively, that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for 6 hours cumulatively, and sit for 6 hours total in an 8-hour workday. See AR 136-38, 155-58. One of Plaintiff's treating doctors, Emerald Huang, M.D., described her functional status on November 29, 2012, as "[i]ndependent with functional mobility and [activities of daily living]."AR 3068. This conflicts directly with Dr. Shamlou's opinion that, since December 2010, Plaintiff has been unable to lift anything weighing 11 pounds or more and could never bend or stoop, squat, or crouch, and rarely reach or kneel. See AR 4446-47. But these contradictory opinions "trigger[] rather than satisf[y] the requirement of stating 'specific, legitimate reasons.'" See Jepsen v. Colvin, No. 16-0384, 2016 WL 4547153, at *3 (C.D. Cal. Aug. 31, 2016).

Likewise, the fact that Dr. Shamlou wrote a letter on Plaintiff's behalf to assist her in obtaining food benefits was not a legitimate reason to discount his opinion. This by itself has no bearing on whether Dr. Shamlou's opinion about Plaintiff's RFC is unreliable. But this error was harmless because the ALJ relied on other specific and legitimate reasons. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context.").

First, the ALJ properly noted a conflict between the objective medical evidence and Dr. Shamlou's opinions. On many occasions between 2011 and 2014, examining physicians noted normal muscle strength; negative straight-leg raising, or positive straight-leg raising causing pain only without documentation of a radicular component; normal range of motion, reflexes, and muscle tone; intact sensation; and "giveway weakness" and exaggeration of symptoms by Plaintiff in an apparent attempt to obtain narcotics. See AR 27-28 (citing AR 1546, 1822, 1901-02, 2266, 2399, 2470, 2468, 2466, 2459, 2686, 2799-800, 2900 ("Not cooperative on exam due to significant giveway

weakness which she reports is due to pain . . . limited effort"), 3050, 3104, 3172, 3220, 3279-83 ("Alert, cooperative female rhythmically jerking her abd and lower back while lying on gurney. Jerking stops when asked to focus on other tasks during history and PE."), 3346 ("[L]ikely drug seeking behavior as she's in the ER multiple times a month. Presents to neurology for reasons she's not clear of . . . I saw no objective deficits on her exam."), 3369 ("Per her chart notes, multiple inconsistencies in her history and documentations by multiple physicians"), 3542 ("Pain is out of proportion with examination and findings. . . . No diagnosis found."), 3728-29 ("I offered Ortho Spine referral for 2nd opinion—pt refused. Pt was very angry at my refusal to give her Norco . . ."), 3799, 3923-24 ("Of note, during this test, the patient was . . . crying, screaming, groaning during nerve conduction even during normal pressure applied with probe, even before electric stimulation was applied."), 3930, 4696, 4698, 4700, 4702, 4706, 4708); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (finding that ALJ properly rejected treating physician's opinion where treatment notes "provide[d] no basis for the functional restrictions he opined should be imposed on [plaintiff]"); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." (citations omitted)).

The ALJ also properly contrasted Plaintiff's conservative treatment records with Dr. Shamlou's opinion. She repeatedly refused additional surgical treatment from Dr. Shamlou, as noted above, and "the bulk of the progress notes . . . suggest that claimant's main issue is her use (or mis-use) of medications," which Dr. Shamlou declined to address in his ultimate opinion. AR 33. The ALJ noted Plaintiff's pattern of failing to comply fully with treatment advice, such as when Dr. Shamlou noted that she was taking multiple medications against his advice, and when she declined his offer of a

dorsal column stimulator. See AR 33 (citing AR 3149). The ALJ noted that on March 22, 2013, Plaintiff was "screaming for [about] 45 minutes about not getting the [medication] refills" and refused to consider non-drug treatment such as additional surgery or referral to addiction medication. See AR 33-34 (citing AR 3814, 3820). This conflict is a specific and legitimate reason for rejecting Dr. Shamlou's opinion. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that ALJ properly refused to fully credit treating physician opinion where functional limitations were undermined by conservative course of treatment); see also Carmickle, 533 F.3d at 1162 ("[A] conservative course of treatment can undermine allegations of debilitating pain.").

Finally, Dr. Shamlou's failure to address Plaintiff's well-documented drug-seeking behavior in his RFC Questionnaire constitutes a valid reason for discounting Dr. Shamlou's opinion. See Young-Fitch v. Colvin, 624 F. App'x 506, 507 (9th Cir. 2015) (holding that ALJ did not err in giving little weight to treating physician who gave opinion finding extreme limitations but did not address claimant's drug-seeking behavior). Accordingly, the Court finds that the ALJ offered specific and legitimate reasons supported by substantial evidence in the record for refusing to give Dr. Shamlou's findings controlling weight. See Lester, 81 F.3d at 830-31.

///
///
///
///
///
///
///
///

# III.

# CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:  September 20, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge